HENRY C. LITTLE *vs.* JOSEPH B. PHIPPS & others.

Suffolk.    January 25, 1911. — March 3, 1911.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & RUGG, JJ.

*Agency. Custom. Equity Jurisdiction,* Accounting. *Evidence,* Presumptions and burden of proof.    *Equity Pleading and Practice,* Master's report.

If an agent in charge of property belonging to his principal takes a secret profit or commission in regard to the matter in which he is employed, he loses his right to his agreed compensation, although the result may be to give the principal the benefit of valuable services rendered by the agent without compensation.

If an agent in charge of property belonging to his principal takes a secret commission, by which he loses his right to compensation for his services, he cannot avoid this result by showing that it was the custom for agents to take such commissions without the knowledge of their principals, because such a custom would be contrary to sound public policy.

In a suit in equity for an accounting, brought by the owner of certain real estate against his agent, in whose hands the property had been placed for management and sale at a profit, with an agreement that on the sale of the property by the defendant as agent, after paying the incidental expenses, the plaintiff should be paid the money advanced by him for the purchase of the property with interest at the rate of six per cent and that the net balance should be divided equally between the plaintiff and the defendant, it appeared that the defendant sold the property at a profit, but that in rendering an account to the plaintiff of incidental expenses he charged $50 as paid to an attorney for examining the title, when in fact he had paid the attorney only $25. *Held,* that this secret discount, whether taken with a corrupt intent or not, was a failure of duty on the part of the defendant which deprived him of his right to retain his stipulated portion of the net proceeds of the sale or to receive any compensation for his services.

In a suit in equity for an accounting, brought by the owner of certain real estate, which he had put in the hands of the defendant for management and sale, where the plaintiff contends that an item of a certain amount, which was charged in the defendant's account as paid to the plaintiff, was so charged improperly and that the defendant should not be credited with it, the burden is not on the plaintiff to prove that the amount was credited to the defendant improperly, but

is on the defendant to account for the money or property of the plaintiff that had come into his hands.

In a suit in equity a finding of a master on a question of fact cannot be revised unless the evidence on which the finding was made is reported or described in his report.

MORTON, J.   This is a bill for an accounting in respect to various transactions between the plaintiff and the defendant Phipps, whom we will speak of as the defendant.   The case was sent to a master.*   Upon the coming in of his report both parties filed objections and exceptions thereto.   Certain of the plaintiff's exceptions were sustained and the others were overruled.   The defendant's exceptions were overruled.   A decree was entered in favor of the plaintiff. †   Both parties appealed from the order overruling their exceptions and from the final decree.

The matters now in issue relate to only two transactions — the Allen estate so called and the St. James Terrace property — the others having been eliminated.   The plaintiff was induced to purchase these estates by the recommendation of the defendant with a view to their resale.   The plaintiff was to furnish and did furnish the funds to make the purchases, and the title to both estates was taken in his name.   In regard to the Allen estate it was agreed that the defendant should manage the property and should sell it, and that from the proceeds, after deducting the expenses incidental thereto, the plaintiff should be repaid the money advanced by him, with six per cent interest, and the net proceeds should be equally divided between the plaintiff and the defendant, the same to be in full for the defendant's services.   The property was sold at a profit, but in rendering an account to the plaintiff the defendant charged $50 as paid to an attorney for examining the title.   In fact he paid only $25 ; and the plaintiff contends that the result of the defendant's action is to deprive him of any right to compensation.

In regard to the St. James Terrace property, the master finds that the agreement was that the defendant should attempt to sell it, and until a sale should manage it, attend to the necessary repairs and collect the rents, and for his services in managing the estate should receive one half the net profits and should pay

* Arthur P. Hardy, Esquire.
† The case was heard in the Superior Court by *Hitchcock,* J.

to the plaintiff the other half. In ascertaining the net profits six per cent interest was to be allowed the plaintiff on the amount paid by him on account of the purchase, and if a sale was made the parties were to divide equally the net balance of the selling price after deducting the amount advanced by the plaintiff on account of the purchase. The property was purchased in May, 1904, and the defendant continued to manage it until January 1, 1906, when the plaintiff took charge of it in accordance with a notice which he gave to the defendant and to which, so far as appears, the defendant did not object. During the time that the defendant managed the property he received a secret rebate or commission of ten per cent on all bills for repairs. The plaintiff contends that, by reason thereof, the defendant has lost any right to compensation which he would otherwise have had as in the similar case of the Allen estate. The master ruled that the defendant should account for the ten per cent thus received, but refused to disallow his claim to one half the net profits received by him during his management of the property, and the judge of the Superior Court sustained the ruling subject to the plaintiff's objection and exception. In regard to the charge for the attorney's fee in the Allen case the master refused to rule as requested by the plaintiff that it constituted a fraud on him and deprived the defendant of all right to share in the net profits arising from the sale of the estate, and found and ruled that the plaintiff had failed to prove any fraud on the part of the defendant in connection with the management or sale of the estate. He found that it did not appear under what circumstances the discount was made, and declined to make any deduction on account of it. The judge, however, allowed the defendant only what he actually had paid.

It is well settled that the agent is bound to exercise the utmost good faith in his dealings with his principal. As Lord Cairns said, this rule " is not a technical or arbitrary rule. It is a rule founded on the highest and truest principles of morality." *Parker* v. *McKenna*, L. R. 10 Ch. 96, 118. See also *Quinn* v. *Burton*, 195 Mass. 277; *Wadsworth* v. *Adams*, 138 U. S. 380; *Murray* v. *Beard*, 102 N. Y. 505. If the agent does not conduct himself with entire fidelity towards his principal, but is guilty of taking a secret profit or commission in regard to

the matter in which he is employed, he loses his right to compensation on the ground that he has taken a position wholly inconsistent with that of agent for his employer, and which gives his employer, upon discovering it, the right to treat him so far as compensation, at least, is concerned, as if no agency had existed. This may operate to give to the principal the benefit of valuable services rendered by the agent, but the agent has only himself to blame for that result. If the plaintiff had known that the defendant was receiving commissions and had not objected, the case would have stood very differently. But the master has found that the plaintiff was ignorant of it. The fact that it was the custom to do as the defendant did cannot help him. Such a custom is contrary to sound public policy. It was held in *Hippisley* v. *Knee Brothers*, [1905] 1 K. B. 1, that inasmuch as the defendants had received the secret discount without fraud and in respect to a matter that was merely incidental to and separate from the main duty which they owed to the plaintiff, they were not thereby disentitled to retain their commission. It is difficult to see why the secret discount did not relate to the very things which the defendants were employed to do, as was held to be the fact in the later case of *Stubbs* v. *Slater*, [1910] 1 Ch. 195. But however that may be it is impossible to say, we think, in the present case, what part of the compensation agreed upon was due in respect to the unfaithful part of the defendant's services and what was not, and it follows that he is entitled to retain no part of the compensation agreed upon, even according to the doctrine laid down in *Hippisley* v. *Knee Brothers*, *supra*. It is immaterial whether the secret discount was taken with a corrupt intent or not. It is the inconsistent relation created by taking it, and its corrupting tendency which the law condemns. *Harrington* v. *Victoria Graving Dock Co.* 3 Q. B. D. 549. It should be observed that it is now made criminal for an agent to receive a commission under circumstances like those appearing in this case. St. 1904, c. 343. The result is that we do not think that the defendant is entitled to retain any of the stipulated profits or compensation which he has received.

The plaintiff contended that an item of $225, which was charged in the defendant's account as paid to the plaintiff, was

improperly so charged, and that the defendant should not be credited with it. The master ruled that the burden was on the plaintiff to show that it was improperly credited to the defendant, and found that he had failed to sustain the burden and for that reason disallowed the plaintiff's contention. The plaintiff objected and excepted to this ruling and finding. The exception was overruled. The burden of proof was on the defendant to account for money or property of the plaintiff that had come into his hands, and for that reason this exception should have been sustained. *Marvin* v. *Brooks*, 94 N. Y. 71.

The defendant contends that the master should have allowed him one half of the profits of the management of the St. James Terrace property since the plaintiff took possession of it in January, 1906. The master's findings and rulings in regard to this matter are as follows: " I find and rule that the substance and effect of the agreement between the parties was that the respondent was to receive one half of the net profits from the running of the estate as compensation for his services in that connection, and that when the estate was sold he was to receive one half of the net profits of the sale in addition to whatever he had received from the management. I also find and rule that when he ceased to have charge of the property his right to one half of the profits of the management of the estate ceased, and that he is not entitled to an accounting from the complainant for profits made in the running and management of the estate subsequent to January 1, 1906."

The evidence is not before us and we cannot therefore say that these rulings and findings are wrong. So far as appears there was nothing to prevent the plaintiff from taking possession of the property as he did, and nothing to require him to account to the defendant for any part of the profits after he took possession.

The result is that the decree must be set aside and the case stand for further hearing in accordance with this opinion.

*So ordered.*

*S. R. Wrightington*, for the plaintiff.

*G. V. Phipps, F. Durgin & R. A. B. Cook*, for the defendant Phipps, submitted a brief.